**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

ELIYAHU ARANIAS,

————Case No.: 1:22-cv-4510 - PK

Plaintiff,

-against-

SMG AUTOMOTIVE HOLDINGS LLC d/b/a
BROOKLYN CHRYSLER JEEP DODGE RAM,
ZACHARY SCHWEBEL,
CHRYSLER CAPITAL LLC,
TAFAWA LEE,
TIFFANY LEV,
BRYANT QUINTANA,
JIMMY CALLE,
TEMPLE HYMAN,
MELISSA SWIGGER,
BLANCA GARCIA, and
JOHN DOES 1 – 6 RICHARD CAPPETTA,

Defendants.

-----------------------------------------------------------------------X

### FIRST-AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Eliyahu Aranias brings suit against a dealership, SMG Automotive Holdings LLC ("SMG"), the owner and manager of SMG, Zachary Schwebel, unknown employees of SMG, John Does 1-6 Tafawa Lee, Tiffany Lev, Bryant Quintana, Jimmy Calle, Temple Hyman, Melissa Swigger, Blanca Garcia, and Richard Cappetta (collectively "Employee Defendants"), and an auto finance company, Chrysler Capital LLC, for their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, negligence, gross negligence, and GBL § 380-s and invasion of privacy/false light.

1

Last saved: 2/21/2023 5:16 PM

### Summary of Claims[1]

Due to either policies and practices that recklessly or wantonly disregarded the potential for identity theft or ~~negligent employment and supervision of John Does 1-6~~intentional identity theft, the dealership SMG Automotive Holdings LLC ("SMG"), owned and operated by Zachary Schwebel, sold a car ("the Vehicle") to Latisha Kermon in the name of Plaintiff Eliyahu Aranias without Mr. Aranias's authorization or knowledge. To facilitate this sale, the SMG employees Tafawa Lee, Tiffany Lev, Bryant Quintana, Jimmy Calle, Temple Hyman, Melissa Swigger, Blanca Garcia, and Richard Cappetta (collectively "Employee Defendants")~~John Does 1-6~~, under the employment and supervision of Mr. Schwebel, requested Mr. Aranias's credit reports without his authorization or knowledge, and similarly procured financing for the Vehicle without Mr. Aranias's authorization or knowledge from Chrysler Capital LLC. When Mr. Aranias learned of the fraudulent transaction, he had to track down the Vehicle himself and have it repossessed and returned to the dealership. While Chrysler Capital repurchased the loan it extended to finance the Vehicle, both Chrysler Capital and SMG ignored a demand by Mr. Aranias for documents he needed to help undo the destruction caused by the identity theft that Defendants had intentionally, recklessly or negligently facilitated.

Because Ms. Kermon used the Vehicle in Mr. Aranias's name to violate multiple traffic laws and incur tolls, Mr. Aranias was forced to spend time and money disputing that these tickets and tolls were incurred by him, sending out four disputes to debt collectors and the New York City Department of Finance. And because Defendants, despite admitting the purchase of

---

[1] This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

the Vehicle was fraudulent, did not contact the credit bureaus to remove the unauthorized pulls of his credit reports, Mr. Aranias was also forced to spend time and money disputing those unauthorized pulls with Experian and TransUnion, having to send two disputes to each of the credit bureaus before the pulls were finally removed. Before these pulls were removed, they were published to both current and potential creditors.

In addition to the costs of disputing the tickets, tolls, and unauthorized credit pulls, Mr. Aranias also suffered from anxiety and sleeplessness due to Defendants' violations. He now feels very vulnerable, that he could again become a victim of identity theft at any time that will throw his life into disarray.

### Jurisdiction and Venue

1.      This Court has federal question jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

2.      Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b), because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### Parties

4.      Plaintiff Eliyahu Aranias ("Plaintiff" or "Mr. Aranias") is a citizen of New York who resides within this District.

5.      Plaintiff is a "consumer" as that term is defined by § 1681a(c) of the FCRA.

6.      Defendant SMG Automotive Holdings LLC ("SMG") is a domestic limited liability

3

company doing business as "Brooklyn Chrysler Jeep Dodge Ram" with a principal place of business in Kings County, New York.

7.      With respect to information it has obtained from consumer reporting agencies ("CRAs") regarding Plaintiff, SMG is a "user" of credit information within the meaning of the FCRA at 15 U.S.C. § 1681 *et seq.*

8.      Defendant Chrysler Capital LLC ("Chrysler") is a foreign limited liability company with a principal place of business in Tarrant County, Texas.

9.      With respect to information it has obtained from consumer reporting agencies ("CRAs") regarding Plaintiff, Chrysler is a "user" of credit information within the meaning of the FCRA at 15 U.S.C. § 1681 *et seq.*

10.     Defendant Zachary Schwebel is, upon information and belief, a co-owner and the sole manager of SMG, and resides in the state of New York.

11.     The bases for this belief is Mr. Schwebel's statement in a sworn affidavit on April 11, 2018 and the Operating Agreement dated September 26, 2016. **Exhibit A** (Affidavit of Schwebel), ¶¶ 3, 23 and **Exhibit B** (Operating Agreement), § 5.1 ("Zachary Schwebel is the only Member that qualifies as a Manager of the Company").

12.     In a more recent affirmation dated April 15, 2022, Mr. Schwebel describes himself as "the principal" of SMG. **Exhibit C** (Affirmation of Schwebel), ¶ 1.

13.     Upon information and belief, Mr. Schwebel employed John Does and John Does' acts described herein were carried out in the scope and course of that employment.

14.     Upon information and belief, Mr. Schwebel established and executes the business

4

structure, payment structure, and policies and procedures of SMG, including the negligent hiring and supervision of John Does 1-6.

15.     Mr. Schwebel is personally liable for the misconduct that forms the basis of this suit. Mr. Schwebel has consciously disregarded the use of policies and procedures to prevent identity theft and other deception, and negligently hiring and supervising employees like John Does 1-6.

16.     At minimum, Mr. Schwebel was negligent in setting up the policies and procedures that facilitated the identity theft against Mr. Aranias.

17.     Defendants Tafawa Lee, Tiffany Lev, Bryant Quintana, Jimmy Calle, Temple Hyman, Melissa Swigger, Blanca Garcia, and Richard Cappetta (collectively "Employee Defendants")John Does 1-6 are the employees of SMG and Mr. Schwebel who engaged in the misconduct outlined in this Complaint.

18.     All acts of John DoesEmployee Defendants described herein, whether intentional, wantonly reckless, or negligent, were carried out in the course and scope of their employment by SMG and Mr. Schwebel.

**Factual Allegations**

***The Identity Theft***

19.     On or around February 21, 2021, unbeknownst to the Plaintiff, a woman named Latisha Kermon went to SMG to purchase a vehicle in the name of Plaintiff.

20.     Inquiries made on or around February 21, 2021 by Ally Financial to Trans Union, by Progressive Auto 31 to Trans Union, by Liberty Mutual to Trans Union, by "TCI/First Help Financial" to Experian, by Santander Consumer USA to Experian, by NCCINC/Brooklyn

5

Chrysler to Experian, by Chrysler Capital to Experian, by Ally Financial to Experian (twice), and by Global Lending Services to Experian were all made due to solicitations by Latisha Kermon and SMG in an attempt to purchase a vehicle in the name of Plaintiff. **Exhibit D** (Trans Union Inquiries) and **Exhibit E** (Experian Inquiries).

21.     Mr. Aranias had not applied for credit with SMG, Chrysler Capital, or any of the above-named lenders on or around February 21, 2021.

22.     Mr. Aranias had not authorized SMG, Chrysler Capital, or any of the other lenders to obtain any of her consumer reports on or around February 21, 2021.

23.     Prior to obtaining Mr. Aranias' consumer reports, SMG personnel, ~~John Does 1-6~~Employee Defendants, who had neither seen Mr. Aranias in person nor spoken to him regarding co-signing on a loan for Ms. Kermon, did not undertake any effort to confirm that Mr. Aranias intended to purchase a vehicle and be liable for the financing of the vehicle.

24.     This failure was due to either the negligence of Mr. Schwebel and SMG in not implementing policies and practices necessary to prevent identity theft, the willful implementation of policies and practices under the auspice of the COVID-19 pandemic that evinced a conscious disregard for preventing identity theft, or ~~the negligent employment and supervision of~~intentional identity theft by ~~John Does 1-6~~Employee Defendants and other SMG employees.

~~24.~~25.  In the alternative, the failure was due to the negligence of Employee Defendants within the scope of their employment by and under the supervision of Mr. Schwebel and SMG.

~~25.~~26.  Mr. Aranias had not authorized SMG to distribute his Social Security Number or other

6

personal identifying information to any lenders on or around February 21, 2021.

26.27.  Mr. Aranias had not authorized SMG to represent to lenders that he was seeking a car loan on or around February 21, 2021.

27.28.  Mr. Aranias did not receive any benefit, money, goods, or services as a result of SMG's conduct on or around February 21, 2021.

28.29.  To the contrary, SMG's conduct damaged Mr. Aranias' credit reputation.

29.30.  On or around February 21, 2021, Ms. Kermon, using the identity of the Plaintiff, purchased a 2020 BMW 3 Series, VIN #3MW5R7J0XL8B03761 ("the Vehicle").

30.31.  The sale was carried out by John Does 1-6Employee Defendants.

31.32.  Ms. Kermon financed the Vehicle in Plaintiff's name through Chrysler Capital, making Mr. Aranias liable for $44,464.35 in total payments at $756.29 a month.

32.33.  Upon information and belief, to the degree that there are documents related to the sale on or around February 21, 2021 that purport to have the signature of Plaintiff, those signatures were in fact forged by either Ms. Kermon, SMG, or Chrysler Capital.

33.34.  To obtain financing for this fraudulent transaction, Ms. Kermon and SMG applied for financing, in Plaintiff's name, from several potential creditors.

34.35.  These applications were performed by or otherwise facilitated by John Does 1-6Employee Defendants.

35.36.  Upon information and belief, Mr. Schwebel either expressly authorized those applications, or implicitly authorized and ratified them by setting policies and practices for

SMG that allowed employees like ~~John Does 1-6~~Employee Defendants to make such applications without the presence and expressed consent of the consumer.

~~36.~~37.  At minimum, Mr. Schwebel and SMG were negligent in setting up the policies and practices that facilitated the conduct of ~~John Does 1-6~~Employee Defendants in processing these applications.

~~37.~~38.  These acts were carried out for the benefit of SMG, and thus for the benefit of Mr. Schwebel, and within the scope of employment of ~~John Does 1-6~~Employee Defendants, regardless of whether Employee Defendants' conduct was intentional, wantonly reckless, or negligent.

~~38.~~39.  Prior to obtaining Mr. Aranias' consumer reports, SMG and Chrysler Capital personnel, who had neither seen Mr. Aranias in person nor spoken to him regarding co-signing on a loan for Ms. Kermon, did not undertake any effort to confirm that Mr. Aranias intended to purchase a vehicle and be liable for the financing of the vehicle.

~~39.~~40.  Mr. Aranias would not learn about this fraud until it started to wreak havoc on his life.

### *Mr. Aranias Learns of the Fraud*

~~40.~~41.  On or around March 1, 2021, Mr. Aranias opened the application Credit Karma and saw that his credit score had gone down and he had 5 new inquiries for his credit report. His friend told him it was probably a mistake and to wait a week and to see if it would fix itself.

~~41.~~42.  But a week later, on March 8, 2021, Mr. Aranias began to receive adverse decision letters from the auto finance companies that Ms. Kermon had unsuccessfully attempted to use to commit the identity fraud. **Exhibit F** (Adverse Decision Letters).

8

42.43.  Realizing that his identity had been stolen, he immediately went to the police that day and filed a report. **Exhibit G** (Police Report).

43.44.  On or around March 8, 2021, Chrysler Capital sent Mr. Aranias a bill for the fraudulently incurred debt, which he received about a week later. **Exhibit H** (Bill from Chrysler Capital).

44.45.  On or around March 15, 2021, he also received the title for the Vehicle (**Exhibit I**) and started to receive various notices of violation for toll-jumping, parking violations, and other misconduct committed with the fraudulently purchased Vehicle.

45.46.  Upon information and belief, these violations were committed by Ms. Kermon using the Vehicle.

46.47.  Feeling like the Vehicle was a ticking time bomb due to the escalating amount of violations it was incurring in his name, Mr. Aranias took matters into his own hands, finding the Vehicle and having it repossessed to SMG.

47.48.  SMG claimed to Mr. Aranias that someone at Chrysler Capital had committed the fraud, and that the dealership had not known about the fraud.

48.49.  Upon information and belief, Mr. Schwebel in his role as owner of SMG created the policies or practices of consciously disregarding requirements under the law and selling cars to people purporting to buy them on behalf of others, either willfully facilitating identity theft or recklessly disregarding, in a way close to criminality, the possibility that these policies or practices could facilitate identity theft.

49.50.  At minimum, the creation of these policies and practices by Mr. Schwebel was

9

negligent.

50.51.  In the alternative, this practice by John Does 1-6 were carried out due to the negligentEmployee Defendants committed intentional identity theft under the employment and supervision of John Does 1-6 by Mr. Schwebel and SMG, or the failure was due to the negligence of Employee Defendants within the scope of their employment by and under the supervision of Mr. Schwebel and SMG..

51.52.  On or around March 16, 2021, Chrysler Capital sent Mr. Aranias a letter confirming that it was repurchasing the account fraudulently created in his name. **Exhibit J** (Repurchase Letter).

52.53.  On March 17, 2021, the New York Department of Motor Vehicles, at Mr. Aranias' request, destroyed the plates issued for the Vehicle.

53.54.  On or around March 19, 2021, Chrysler Capital sent Mr. Aranias a letter asking for more information about the identity theft, which Mr. Aranias filled out and sent back on April 28, 2021.

54.55.  Finally on July 28, 2021, the NY DMV sends Mr. Aranias a letter confirming that it had concluded its investigation of the fraud and placed an illegal registration indicator on the Vehicle and plates and removed Mr. Aranias' name from the associated records. **Exhibit K** (NY DMV Letter).

55.56.  On or around July 26, 2021, Mr. Aranias through his attorneys sent a letter to Defendants demanding documents related to the fraudulent sale of the Vehicle, including the Retail Installment Sales Contracts, the credit applications, documents purportedly featuring the signature of Mr. Aranias, copies of Mr. Aranias' driver's license or other forms of photo

identification, and any other document that caused the sale. **Exhibit L** (Demand for Documents).

~~56.~~57.  These documents would have helped Mr. Aranias to dispute the fallout from the fraud Defendants had caused by, for example, evidencing the fraud in disputes sent to the credit bureaus and debt collectors.

~~57.~~58.  But Defendants never responded to this Demand.

~~58.~~59.  And despite the Defendants not disputing the fraud and the NY DMV confirming that the purchase had been fraudulent, Mr. Aranias would have to spend months fighting to stop collection letters for debts he never incurred and trying to remove fraudulent inquiries from his credit reports.

### *Mr. Aranias Has to Send Multiple Disputes for the Tickets Incurred by the Identity Theft, and Ultimately Has to Pay Some Fines Despite Not Being Liable*

~~59.~~60.  Despite receiving the DMV Letter, Mr. Aranias continued to be hounded by debt collectors over fines that were incurred by the identity theft.

~~60.~~61.  From February 26, 2021 to March 9, 2021, Ms. Kermon incurred various fines with the New Jersey Turnpike Authority, the New York City Department of Finance, and the MTA Bridge and Tunnel Authority, with a total cost to Mr. Aranias of $1,673.94.

~~61.~~62.  The debt owed to the MTA Bridge and Tunnel Authority was referred to a debt collector, Transworld Systems Inc, and on or around August 12, 2021, Transworld sent Mr. Aranias a collection letter demanding payment of $930.75. **Exhibit M** (First Transworld Letter).

~~62.~~63.  On or around September 7, 2021, Mr. Aranias sent a dispute letter to Transworld as well

11

as MTA Bridges and Tunnels, explaining that he had been the victim of identity theft and attaching the Transworld Letter, the DMV Letter, a copy of the violations at issue, his Identity Theft Affidavit, and the Police Report. **Exhibit N** (First Dispute to Transworld).

63.64.  Despite receiving this letter with evidence of identity theft, Transworld nevertheless sent another collection letter to Mr. Aranias on September 18, 2021. **Exhibit O** (Second Transworld Letter).

64.65.  On September 30, 2021, Mr. Aranias sent a second dispute letter to Transworld and MTA Bridges and Tunnels. **Exhibit P** (Second Dispute to Transworld).

65.66.  Finally, on November 24, 2021, MTA Bridges and Tunnels dismissed the $930.75 debt fraudulently incurred against Mr. Aranias. **Exhibit Q** (MTA Letter Dismissing Debt).

66.67.  Two of the NYC Department of Finance fines were referred to the debt collector Universal Fidelity, LP, and on or around September 1, 2021, Universal Fidelity sent Mr. Aranias collection letters demanding payment of $75.62 and $75.75. **Exhibit R** (Universal Letters).

67.68.  On or around September 24, 2021, Mr. Aranias sent a dispute letter to Universal Fidelity LP and the NYC Department of Finance, attaching the DMV Letter, the Identity Theft Affidavit, and the Police Report. **Exhibit S** (Dispute to Universal).

68.69.  Rather than dismissing these fines due to the apparent identity theft, the NYC Department of Finance continued to attempt to collect on them, demanding on November 26, 2021 $537.11 from Mr. Aranias. **Exhibit T** (NYC Department of Finance Collection Letter).

69.70.  Finally Mr. Aranias had to retain counsel to step in and demand an end to the collection,

with a new dispute letter sent on February 14, 2022. **Exhibit U** (Dispute to NYC Department of Finance).

70.71.  Fortunately after this dispute, Administrative Law Judge Bruce Mael dismissed 5 of the tickets. **Exhibit V** (Dismissal of Parking Tickets).

### *Mr. Aranias Has to Send Multiple Disputes to Remove Inaccurate Information from His Credit Reports.*

71.72.  When Mr. Aranias pulled his Experian and TransUnion credit reports on June 8, 2021, he discovered that the solicitations of potential creditors made by SMG, in his name but without his authorization or a permissible purpose, now appeared on his credit reports.

72.73.  SMG, as carried out by John Does 1-6Employee Defendants, sent these solicitations for credit in Mr. Aranias' name and without his authorization or a permissible purpose in order to facilitate the fraudulent purchase of the Vehicle by Latisha Kermon.

74.    Upon information and belief, these solicitations were caused by either the policies and practices of SMG implemented by Mr. Schwebel, or by the negligent employment and supervision of John Does 1-6 byintentionally by Employee Defendants under the supervision of Mr. Schwebel and SMG.

73.75.  In the alternative, the solicitations were due to the negligence of Employee Defendants within the scope of their employment by and under the supervision of Mr. Schwebel and SMG.

74.76.  His Experian credit report contained "Hard Inquiries" from Global Lending Services, Ally Financial, Defendant Chrysler Capital, Defendant Chrysler Capital's parent company Santander Consumer USA Bank, and TCI/First Help Financial.

75.77.  His TransUnion credit report contained "Hard Inquiries" from Flagship Credit Acceptance, Ally Financial, First Help Financial, TD Auto Finance, and Wells Fargo Dealer Services.

76.78.  While it is more widely known that inaccurate account information on your credit report can affect your credit, fraudulent credit pulls also can harm consumer's credit.

77.79.  As Experian notes on its website, "Hard inquiries have a negative impact on your credit score." **Exhibit W** (Experian Hard Inquiry Webpage).

78.80.  And even more applicable to Mr. Aranias's circumstance, the Experian website further notes that "Too many hard inquiries in a short time could make it look like you're seeking loans and credit cards that you may not be able to pay back." *Id.*

79.81.  Mr. Aranias had 12 fraudulent hard inquiries and they all fell on the same two days – February 21 and 22, 2021.

80.82.  On or around June 28, 2021, Mr. Aranias sent disputes to Experian and TransUnion. **Exhibit X** (First Experian Dispute) and **Exhibit Y** (First TransUnion Dispute).

81.83.  Both disputes explained the fraud that had caused the inaccurate hard inquiries and attached: (1) the Appeals Board Decision by the NYC Department of Finance, (2) the Identity Theft Victim Report, (3) the Repurchase Letter, (4) the NY DMV Plate Destruction Receipt, and (5) the Police Report. *Ids.*

82.84.  On or around July 21, 2021, TransUnion provided a response to Mr. Aranias, stating that "The document submitted does not appear to be a copy of an official, valid law enforcement report that we can accept as an Identity Theft report." **Exhibit Z** (TransUnion Response).

14

83.85.  The police report attached to Mr. Aranias's dispute was of course an official law enforcement report, specifically from the New York City Police Department. **Exhibit Y,** p. 48.

84.86.  But because this Response also assured him that "TransUnion has opened a reinvestigation of the disputed information," he waited for further investigation.

85.87.  However, he did not receive any further information from Experian or TransUnion about whether they would remove the inaccurate information on his credit reports.

86.88.  On or around November 11, 2021, Mr. Aranias sent second disputes to both Experian and TransUnion. **Exhibit AA** (Second Experian Dispute) and **Exhibit BB** (Second TransUnion Dispute).

87.89.  In addition to again attaching (1) the Appeals Board Decision, (2) the ID Theft Victim Report, (3) the Repurchase Letter, (4) the NY DMV Plate Destruction Receipt, and (5) the Police Report, Mr. Aranias also now included (6) the Determination of Illegal Registration by the NY DMV. *Ids.*

88.90.  Finally, on December 7, 2021, TransUnion updated Mr. Aranias's credit report to remove the inaccurate inquiries. **Exhibit CC** (TransUnion Dispute Resolution).

89.91.  Also on December 7, 2021, Experian updated Mr. Aranias's credit report to remove the inaccurate inquiries. **Exhibit DD** (Experian Dispute Resolution).

90.92.  It took Mr. Aranias nearly a year to get these inaccurate credit pulls removed his reports, pulls that never would have been on the reports but-for the improper and unauthorized handling of Mr. Aranias's personal information by Defendants.

91.93.  During this period, Mr. Aranias held off on applying for credit cards and other credit that

15

he had been planning to obtain for business and personal use, fearing that the harm to his credit reputation would cause him to be denied.

~~92.~~94.  While the inaccurate information was removed, Mr. Aranias had to incur postage costs and spend considerable time compiling the information for these disputes and mailing them. These injuries were caused by Defendants' improper and unauthorized handling of Mr. Aranias's personal information.

### SMG's History of Negligent Employment and Supervision Leading to Fraud

~~93.~~95.  By SMG's own allegations in a lawsuit it filed on April 11, 2018, it hired a woman named Vanessa Vence-Small as "Chief Financial Officer" on or about August 10, 2017. **Exhibit EE** (*Vence-Small* Complaint), ¶ 7.

~~94.~~96.  Ms. Vence-Small was hired by SMG only two months after she had been fired by her prior employer, a dealership named Continental BMW in Connecticut, over bookkeeping irregularities, and she had been reported to the police.

~~95.~~97.  Upon information and belief, any reasonable review of a prospective employee by SMG would have determined that Ms. Vence-Small was suspected of engaging in fraudulent conduct.

~~96.~~98.  SMG states that "As a Chief Financial Officer, Defendant was employed in a position of trust by Plaintiff." *Id.* ¶ 8.

~~97.~~99.  SMG accuses Ms. Vence-Small of various wrongful conduct, including "remov[ing] Dealership files and conduct[ing] Dealership business using Defendant's persona e-mail address in contravention of the Dealership's policies." *Id.* ¶ 25.

~~98.~~100.And Ms. Vence-Small pled guilty to wire fraud "arising from an embezzlement scheme

16

at a BMW dealership in Connecticut wherein Defendant admitted to making sixty-five (65) unauthorized electronic funds transfers totaling over $900,000.00 from that dealership's bank account to her personal American Express account, and issued twenty-eight (28) checks to pay for various personal expenses totaling over $200,000.00." *Id.* ¶ 29.

99.101. When SMG confront Ms. Vence-Small about her conduct, she apparently emailed its counsel screenshots of text messages that she claimed showed shareholder Alex Landa engaging in "bank fraud." **Exhibit A** (Affidavit of Schwebel)..

100.102.    The employment and supervision of Ms. Vence-Small by Mr. Schwebel and SMG, particularly only two months after she was fired for suspect embezzlement, evinces the same kind of negligent employment and supervision of John Does 1-6Employee Defendants that led to the fraud against Mr. Aranias, regardless of whether Employee Defendants acted intentionally, wantonly reckless, or negligently.

### Mr. Aranias Suffered Emotional Distress Because of SMG and Chrysler Capital's Misuse of His Credit Information

101.103.    Mr. Aranias didn't sleep for the two weeks between when he discovered the identity theft and when he finally tracked down the fraudulently purchased car.

102.104.    It took a lot of time and effort to locate and repossess the fraudulently purchased car himself.

103.105.    Even after the Vehicle was returned to the dealership, he still had to spend a lot of time dealing with the identity theft as detailed above.

104.106.    He works very hard, usually getting home from work at 11 or 11:30 PM and then waking up for work at 7:30 AM. During this time, his stress prevented him from falling asleep

17

as soon as he got him, keeping him up to 2 AM and when he did fall asleep his sleep was not restful.

105.107.        Mr. Aranias remains highly anxious about his credit, continuing to abstain from applying for more credit even though he desires it.

106.108.        This includes refinancing his mortgage, which he had planned to start when this happened and now he has felt like he has had to put it on hold until he can fix his credit.

107.109.        It has been a constant headache for him.

108.110.        He began to use a credit lock service for himself and his wife after he discovered the identity theft, and even as of this filing, he still checks his credit all the time and continues to pay the monthly subscription for the credit lock service.

109.111.        He feels very bad and very vulnerable now knowing that someone could hurt him this way at any time.

110.112.        Mr. Aranias pays his bills on time, works hard, and does not try to cut corners, and now he has to deal with this problem despite his own responsible behavior.

## COUNT I (against All Defendants)
### Violations of FCRA § 1681b, §1681e, and §1681q, and the subsections thereto

111.113.        Plaintiff restates, re-alleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

112.114.        At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

113.115.        Defendants are each a "person" as that term is defined by 15 U.S.C. § 1681a(b).

114.116.        At no time applicable to this complaint did Plaintiff have with either of the Defendants one of the relationships enumerated under 15 U.S.C. § 1681b(a)(3).

115.117.        At no time applicable to this complaint did either of the Defendants receive the written instructions of the Plaintiff to request his consumer report under 15 U.S.C. § 1681b(a)(2).

116.118.        Each of the Defendants and its employees are prohibited from obtaining a consumer report under false pretenses pursuant to 15 U.S.C. § 1681q.

117.119.        Each of the Defendants is required to establish reasonable procedures that would prevent its facilities from being used to obtain a consumer report under false pretenses and as specifically authorized pursuant to 15 U.S.C. § 1681b(f).

118.120.        Both of the Defendants failed to establish procedures that would prevent its facilities from being used to obtain a consumer report under false pretenses and as specifically authorized.

119.121.        Defendants willfully obtained the information contained in Plaintiff's consumer reports under false pretenses and for a purpose other than one of the specifically enumerated purposes.

**COUNT II (against All Defendants)**
**Willful and Malicious Defamation of Plaintiff**

120.    Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

19

121.   Defendants published statements both orally and through writing to various creditors, prospective credit grantors, credit reporting agencies, government agencies and other entities that Plaintiff had purchased the Vehicle and thus was liable for any associated costs, including but not limited to the parking tickets and toll violations.

122.   The statements made by Defendants were false in that Mr. Aranias did not purchase the Vehicle, and his consequent association with the Vehicle painted Plaintiff as financially irresponsible, irresponsible with motor vehicles, and lawbreaking.

123.   Defendants published these statements to at least the New York Department of Vehicles.

124.   Defendants knew that the statements were false when made, and had no factual basis for making the statements, as Plaintiff did not purchase the Vehicle.

125.   In addition, and despite repeated notices from Plaintiff, Defendants have acted with malice by failing to communicate the information provided to them by Plaintiff to all creditors, prospective creditors, furnishers of information, government agencies, and all other entities to whom it provided the inaccurate information concerning the Plaintiff.

126.   By knowingly publishing false, inaccurate, and misleading information about the Vehicle, Defendants maliciously defamed Plaintiff.

127.   Defendants had actual knowledge of the false, inaccurate, and misleading nature of such information and published it despite that actual knowledge.

128.   Defendants' actual knowledge of the falsity and its reckless disregard for the truth demonstrates its malicious and/or willful intent to injure plaintiff.

129.   Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in

20

~~bringing about the serious injuries, damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate the Plaintiff for the full amount of actual damages, compensatory damages and punitive damages, as well as such other relief permitted under the law.~~

**COUNT ~~V~~ III (against All Defendants)**
**Negligence and Gross Negligence**

~~130.~~122.      Plaintiff incorporates the foregoing paragraphs as if the same were set forth at length herein.

~~131.~~123.      Defendants' negligence consists of the following: (a) Violating the FCRA as set forth above; (b) Disregarding Plaintiff's rights and failing to comply with state laws; (c) Failing to provide prompt notice of the inaccurate information to creditors, potential creditors, and government agencies; and (d) Failing to employ and follow reasonable procedures to prevent identity theft and improper and unauthorized use of credit information.

~~132.~~124.      Additionally, Defendants' ~~negligent~~ selection, hiring, training, supervising, and use of ~~Defendant John Doe~~Employee Defendants to process vehicle purchases for Ms. Francois and others breached their duty of reasonable care as an auto dealership and a "user" as defined under the FCRA.

~~133.~~125.      Defendants' actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing.

~~134.~~126.      Upon information and belief, Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

21

135.127.      As a result of Defendants' above mentioned conduct, Plaintiff sustained and continues to sustain the losses and damages as set forth above.

136.128.      The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate the Plaintiff for the full amount of actual and compensatory damages, punitive damages, as well as such other relief, permitted under the law.

129.   Defendants acted with wanton disregard for Plaintiff's rights close to criminality and malicious in nature.

### COUNT IV (against All Defendants)
### Identity theft statute, GBL § 380-s

130.   Plaintiff incorporates the foregoing paragraphs as if the same were set forth at length herein.

131.   Defendants engaged in identity theft and/or aiding and abetting identity theft, either directly or based on vicarious liability for the theft of Plaintiff's identity by their employees.

132.   This theft resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided.

133.   As detailed above, there are numerous indicia of the intent of Defendants to commit identity theft against Plaintiff.

134.   Upon information and belief, Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

22

137.135.      As a result of Defendants' above mentioned conduct, Plaintiff sustained and continues to sustain the losses and damages as set forth above.

**COUNT VI (against All Defendants)**
**Invasion of Privacy/False Light**

138.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

139.   Defendants' above actions violated Plaintiff's right of privacy by placing the Plaintiff in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends, the New York state government, and the general public.

140.   By such unauthorized invasion, publication and circulation of Plaintiff's name and the inaccurate information, Defendants invaded Plaintiff's right to privacy, subjected Plaintiff to ridicule and contempt, injured Plaintiff's personal esteem, reflected disgracefully on Plaintiff's character, diminished Plaintiff's high standing, reputation and good name among family, friends, neighbors and business associates, destroyed Plaintiff's peace of mind, and caused Plaintiff severe mental and emotional distress.

141.   The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

**JURY DEMAND**

142.136.      Plaintiff demands a trial by jury.

23

## **PRAYER**

~~143.~~137.    For these reasons, plaintiff asks for judgment against defendants for the following:

    a.  Statutory damages under the FCRA of not less than $100 and no more than $1,000, or actual damages, whichever is greater pursuant to 15 U.S.C. § 1681n.

    b.  Actual, exemplary, and punitive damages within the jurisdictional limits of the court;

    c.  An order enjoining and directing Defendants to cease violating the FCRA, 15 U.S.C. § 1681, *et seq.*, and New York G.B.L. § 349;

    d.  Attorney fees and costs;

    e.  Prejudgment and post-judgment interest as allowed by law;

    f.  All other relief, in law and in equity, both special and general, to which plaintiff may be justly entitled.

Dated: Brooklyn, NY          Respectfully submitted,
February 21, 2023


                    /s/ _____
                    Emma Caterine
                    THE LAW OFFICE OF AHMAD KESHAVARZ
                    16 Court Street, #2600
                    Brooklyn, NY 11241
                    Phone: (718) 522-7900
                    Fax: (877) 496-7809
                    Email: Emma@newyorkconsumerattorney.com


                    /s/ _____
                    Ahmad Keshavarz
                    THE LAW OFFICE OF AHMAD KESHAVARZ

16 Court Street, #2600
Brooklyn, NY 11241
Phone: (718) 522-7900
Fax: (877) 496-7809
Email: Ahmad@newyorkconsumerattorney.com

\

25

Last saved: 2/21/2023 5:16 PM