UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
**ELIYAHU ARANIAS,**

                  Case No.: 1:22-cv-4510 -BMC-PK

       **Plaintiff,**

 -against-

**SMG AUTOMOTIVE HOLDINGS LLC d/b/a
BROOKLYN CHRYSLER JEEP DODGE RAM,
ZACHARY SCHWEBEL,
CHRYSLER CAPITAL LLC, and
JOHN DOES 1 – 6,**

       **Defendants.**
-----------------------------------------------------------------------X

**PLAINTIFF'S FIRST SET OF DISCOVERY TO ALL DEFENDANTS**

 Plaintiff serves the above referenced discovery instrument to the above referenced parties by and through said party's counsel as indicated in the certificate of service below.

             Respectfully submitted,
             /s/
             Emma Caterine
             The Law Office of Ahmad Keshavarz
             16 Court Street, #2600
             Brooklyn, NY 11241
             (718) 522-7900
             Email: emma@newyorkconsumerattorney.com

**C E R T I F I C A T E   O F   S E R V I C E**

I hereby certify that on this day I served the above referenced document to the parties listed below via email to:

 Scott H. Mandel, Esq.
 *Attorneys for Defendants*
 333 Jericho Turnpike, Suite 200
 Jericho, New York 11753
 Tel. (516) 280-8580
 Email: smandel@labontelawgroup.com

Date: February 1, 2023
   Brooklyn, NY

/s/
Ahmad Keshavarz
Attorney for Plaintiff
cc: Christian McGannon, Lewis Brisbois, via email to Christian.McGannon@lewisbrisbois.com

1

# DEFINITIONS

Please refer to EDNY Local Rule 26.3 Uniform Definitions in Discovery Requests for the terms used in these discovery demands. Those definitions control unless a specific definition is used in this Definitions section.

When a document production demand asks for "documents sufficient to demonstrate..." you may use an affidavit to answer the question if you wish.

1. These demands are governed by Local Rule 26.3 Uniform Definitions in Discovery Requests, unless otherwise indicated. This includes, without limitation:

    a. **Identify (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

    b. **Identify (with respect to documents).** When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

    c. **Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term **"documents or electronically stored information"** in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

    d. Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

    e. Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

    f. Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

2. Plaintiff adds to the definition of local rule definition of **Identify** (with respect to persons) to include the persons **telephone numbers and email address**, if any.

3. The term "You", "Your", or Defendants means the the Defendants in this federal lawsuit, including the John Does Defendants.

4. The term **"Insurance"** means *any* type of insurance *except* health insurance, auto insurance, or workers compensation insurance. Without limitation, Insurance does include any FCRA, malpractice, errors and omissions, umbrella policy, or general liability policy. The term includes the full terms of the policy as well as the declaration sheet.

5. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession that is equal or superior to the person who has physical possession of the item.

6. The terms "credit report" or "consumer report" have the same definition as "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

7. The term "user" has the same definition as "user" as that term is defined by 15 U.S.C. § 1681 *et seq.*

8. The term **"the Vehicle"** means the 2020 BMW 3 Series, VIN #3MW5R7J0XL8B03761.

9. The term "related to" or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, comprising, or concerning.

10. The term "**John Doe Defendants**" or "John Does 1 – 6" means employees or agents of Defendants involved in the sale, financing, and credit pulls related to the Vehicle.

11. The term Defendants means all the Defendants in this federal lawsuit, including the John Doe Defendants.

12. The term "Prospective Finance Company" means Ally Financial, Progressive Auto 31, Liberty Mutual, TCI/First Help Financial, Santander Consumer USA, NCCINC/Brooklyn Chrysler, Global Lending Services, and their affiliate or subsequent auto finance companies, or any other finance company with which financing was sought in relation to the purchase of the Vehicle.

13. The term "**Documents**" means documents **or electronically stored informationn** in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

14. The term "the **Dealership**" means SMG AUTOMOTIVE HOLDINGS LLC d/b/a BROOKLYN CHRYSLER JEEP DODGE RAM, or any predecessor or successor.

15. The term "**Schwebel**" means Defendant ZACHARY SCHWEBEL,

16. The term "**Chrysler**" means Defendant CHRYSLER CAPITAL LLC, including its partners, corporate parent, subsidiaries or affiliates.

17. The term "**finance**" or "**financing**" means attempts to obtain financing for the purchase or lease of a vehicle, regardless if the those attempts successed. This includes, inter alia, the pulling of credit reports or the execution of submission of credit applications.

## INTERROGATORIES

1. "Identify" all persons who have knowledge of relevant facts, identify the issues upon which you believe they have knowledge.

2. "Identify" the name and address of every witness you expect to call at the trial of this case.

3. "Identify" all persons who participated in responding to these discovery requests or who provided any information for the responses to these discovery requests.

4. "Identify" the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements.

5. Identify the name and address of every witness you expect to call at the trial of this case, and summarize the testimony you expect each such witness to give. Identify persons having knowledge of relevant facts, and give a statement of each identified person's connection with the case and what relevant facts you contend they have.

6. "Identify" the John Doe Defendants and any other person who communicated with Latisha Kermon regarding Plaintiff and the Vehicle.

7. "Identify" the policies and procedures you have to prevent identity theft, including but not limited to requirements for credit pulls, finance applications, and sales.

8. "Identify" the steps you took to investigate the identity theft and measures taken to prevent further identity theft, including but not limited to the termination of employees or the changing of policies and procedures.

9. "Identify" the complaints regarding the sale or financing of vehicles at the Dealership or with Chrysler from January 1, 2010 to present.

    a. This includes claims of misrepresentations as to the terms of sales or financing, false credit application information, unauthorized signatures, identity theft or unauthorized credit pulls

    b. This includes "identifying" the persons at the dealership allegedly involved, "identifying" the consumer, and summarizing the allegations.

    c. If the complaint was made through a governmental agency or via lawsuit, identify the agency and caption of the matter.

10. "Identify" any third parties who may be in possession of documents relevant or arguably relevant to the claims and defenses in this case, as well as an itemization of what the documents may be.

11. For any requested information about a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss, and identify each document

evidencing the existence or nonexistence of each document that cannot be located. This includes text messages.

12. Identify the phone number and phone carrier from January 1, 2021 to present for the Dealership, SCHWEBEL, the John Doe Defendants, or any person involved in the sale or financing of the vehicle, or the allegations in the complaint.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following documents in both a pdf form an in their native electronically stored information ("ESI") format:

1. The documents within your possession, custody, or control concerning:

    a. Plaintiff,

    b. his claims brought by way of this suit,

    c. his consumer reports,

    d. his credit worthiness,

    e. the Vehicle,

    f. the sale and attempted financing of the Vehicle in the name of Plaintiff

    g. the sale and attempted financing of any vehicle for Latisha Kermon,

    h. Agreements with a Prospective Finance Company that would govern financing of the Vehicle;

    i. Agreements regarding accessing a customer's credit report (such as with Credit Bureau Connection or Dealertrack)

2. Screenshots of any dealership management software (i.e. Dealertrack) regarding Plaintiff, his consumer reports, the Vehicle, and Latisha Kermon, including but not limited to the Deal Jacket History showing who pulled Mr. Aranias' credit reports and who submitted finance applications in his name.

3. Any contracts or other agreement among the Defendants in place from January 1, 2019 to present, including any documents referenced or incorporated by reference into the contract of agreement.

4. All Documents– in any form – showing the communication of any person or entity regarding Plaintiff, the Vehicle, and any of Plaintiff's consumer reports, including, but not limited to:

    a. among Defendants; or between Defendants and
        i. Plaintiff,
        ii. Latisha Kermon,
        iii. any Prospective Finance Company,
        iv. any intermediary (including Dealertrack) between Defendants and Prospective Finance Companies.
        v. Any person
    b. Without limiting this demand for Documents, this includes:

      i. Data transfers
      ii. Texts
      iii. Whatapp calling history or message history.
      iv. Voicemail messages
      v. Emails
      vi. Faxes
      vii. Written documents
      viii. Credit report requests and responses
      ix. Applications for credit and responses.
      x. Representations as to credit worthiness
      xi. Credit applications and supporting documents
      xii. Draft or final contracts or agreement
      xiii. Messages through dealership management software (i.e. Dealertrack)

5. The documents you reference in your initial disclosures.

6. All documents regarding or relating to Latisha Kermon, including but not limited to any forms filled out by her either in her own name or in the name of Plaintiff.

7. All contracts in place from January 1, 2019 that require the Dealership to record some or all of the sales and financing transactions of the dealership.

8. The documents used in establishing the credit score or credit worthiness of Plaintiff from May 1, 2020 to present.

9. The documents reflecting the policies and procedures you have to prevent identity theft.

10. The insurance policies that may cover the claims brought by way of this suit, regardless of whether you have forwarded this claim to your insurance carrier.

11. The correspondence regarding insurance coverage or indemnification for the claims made in this FCRA lawsuit.

12. The documents reflecting the policies and procedures you have regarding "permissible purpose" for using consumer reports.

13. The documents reflecting the policies and procedures you adopted due to the COVID-19 pandemic.

14. The documents reflecting the policies and procedures you have regarding employment of anyone pulling credit reports or making finance applications.

7

15. The documents – in any form – showing the communication of any person or entity regarding Plaintiff, the Vehicle, and any of Plaintiff's consumer reports.

16. Video recordings concerning Plaintiff, the Vehicle, and any of Plaintiff's consumer reports.

17. Phone call recordings concerning Plaintiff, the Vehicle, and any of Plaintiff's consumer reports, and phone records regarding any calls made in connection with this allegations on this lawsuit.

18. The documents reflecting the trainings given to and supervision of your employees on the prevention of identity theft.

19. The documents reflecting the trainings given to your employees on the permissible purpose of consumer reports.

20. The documents upon which you relied or referred in answering these discovery requests or in filing your answer.

21. This suit seeks exemplary and punitive damages. One factor to be considered in the award of such damages is the net assets of the Defendant. Therefore, please produce federal and state tax returns from January 1, 2019 to present, and supporting documents.

22. Produce documents related to the amount reported for sales tax to the DMV for the last 4 years, including the number of vehicles sold, the amount received for the sales of those vehicles.

23. If any of the documents produced use abbreviations or codes, please provide documents sufficient to show the meaning of said abbreviations or codes.

24. All agreements, including but not limited to those between Defendants and any dealer management software vendor (i.e. Dealertrack), governing the sale and financing of the Vehicle.

25. Documents sufficient to identify John Does #1-6.

26. The employment records for John Does #1-6, including but not limited to employment agreements and disciplinary records.

27. Documents sufficient to show the hiring and supervision of John Does #1-6 by Defendant Zachary Schwebel, including but not limited to emails, employment applications, and internal memorandum.

8

28. All documents showing compliance or lack thereof with the process and procedures in the documents responsive to Request for Production of Documents #10-12.

29. Documents sufficient to demonstrate the number of times, from January 1, 2011 to present, you requested a consumer report without a permissible purpose.

30. Documents sufficient to demonstrate the number of times, from January 1, 2011 to present, you sold a vehicle to a consumer without the consumer being present at the dealership.

31. Documents reflecting any complaints against Defendants or employees or agents of Defendants regarding the sale or financing (or putative sale or financing) of any vehicle from January 1, 2010 to present.  This includes, *inter alia*, allegations of misrepresentations as to the terms of sales or financing, false credit application information, unauthorized signatures, identity theft or unauthorized credit pulls. This includes complaints made to Defendants or their agents, or through a governmental agency or via lawsuit.

32. The documents upon which your interrogatory answers are based.

33. This includes, *inter alia*, allegations that a vehicle was sold, leased, or financed, or that a credit report was pulled or credit application submitted, without the consent of the putative consumer. This includes all claims of identity theft, forgery, or alteration of documents.

34. If an application for insurance coverage was made, please provide the application and response from the carrier, if any. Please also provide the insurance policy and declaration sheet, even if coverage was denied.

35. The documents upon which you base your affirmative defenses.

36. The written document describing any policy, procedure, practice or training which you anticipate will be the subject of testimony at trial.

37. The documents reflecting business structure of the Dealership from January 1, 2019 to present, and any changes in that structure including but not limited to changes in management and ownership.

38. Without limiting Request for Production 1, please produce, for the time period of January 1, 2019 to present:

      a. Schedule K-1 tax forms reflecting the members and percentage of ownership of each member of the Dealership.

      b. Documents reflecting the sale, change of members or partners, or change of management of the Dealership.

      c. The members, managing member, and corporate officers of the Dealership.

39. The transcript of any deposition of Defendants and current or former employees of the Dealership from a prior action related to allegations misconduct in the sale or financing of vehicles from January 1, 2010 to present.

40. The documents received in response to any third-party subpoena.

41. The transcript of any deposition taken in this lawsuit any party or third party.

42. Documents sufficient to show the information requested from Defendants during their depositions, including but not limited to each call for production of documents made on the record.

43. Provide telephone records for all calls made or received, or texts sent or received, related to the allegations in the complaint, or the sales and financing of the vehicle.

## REQUESTS FOR ADMISSION

1. You pulled Plaintiff's Experian credit report without his authorization.
2. You pulled Plaintiff's TransUnion credit report without his authorization.
3. You pulled Plaintiff's Experian credit report without his signature.
4. You pulled Plaintiff's TransUnion credit report without his signature.
5. You pulled Plaintiff's Experiean credit report without photo identification of Plaintiff.
6. You pulled Plaintiff's TransUnion credit report without photo identification of Plaintiff.
7. Defendant Zachary Schwebel is the sole member of SMG Automotive Holdings LLC.
8. Defendant Zachary Schwebel is the sole corporate officer of SMG Automotive Holdings LLC.
9. One or more of the Prospective Finance Companies requires you to make a video and audio recording of your sale of vehicles to customers.
10. Your contract with one or more of the Prospective Finance Companies requires you to make a video and audio recording of your sale of vehicles to customers.
11. Chrysler Capital LLC requires SMG Automotive Holdings LLC to make a video and audio recording of sales of vehicles to customers.
12. At one point you had a video and audio recording of the sale of the Vehicle.
13. You destroyed or deleted the video and audio recording of the sale of the Vehicle.
14. You destroyed or deleted all video recordings in your possession, custody, or control, including by video surveillance camera, made at Brooklyn Chrysler Jeep Dodge Ram on February 21, 2021.
15. Plaintiff has never been to the Dealership.
16. Plaintiff did not sign any documents related to the Vehicle or attempts to obtain financing of the vehicle.
17. With respect to information it has obtained from consumer reporting agencies ("CRAs") regarding Plaintiff, Chrysler is a "user" of credit information within the meaning of the FCRA at 15 U.S.C. § 1681 et seq.
18. With respect to information it has obtained from consumer reporting agencies ("CRAs") regarding Plaintiff, SMG is a "user" of credit information within the meaning of the FCRA at 15 U.S.C. § 1681 et seq.
19. Mr. Schwebel established and executes the business structure, payment structure, and policies and procedures of the Dealership

20. Mr. Aranias had not authorized the Dealership or Chrysler Capital to obtain any of his consumer reports on or around February 21, 2021.

21. Mr. Aranias played no role in the sale or financing of the Vehicle.

22. Mr. Aranias was never at the Dealership for the sale or financing of the Vehicle.

23. Mr. Aranias did not sign any document related to the sale or never at the Dealership for the sale or financing (or attempted financing) of the Vehicle. Mr. Aranias was never at the Dealership for the sale or financing (or attempted financing) of the Vehicle.